# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN, SEPTEMBER TERM 1826, AT NORTHAMPTON.

---

PRESENT :

Hon. ISAAC PARKER, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon SAMUEL S. WILDE, } Justices
Hon. MARCUS MORTON,

---

## Joseph Adams, Petitioner for *Certiorari.*

Whether the council have or have not any legal power to act on the subject of train-
ing and governing the militia, the proceedings of the governor and commander-in-
chief will not be invalid by reason of his acting with their advice.

But under U. S. Laws, 2 *Cong.* 1 *Sess. c.* 33, the militia of the respective States
" shall be arranged into divisions, brigades, &c., as the legislature of each State
shall direct," and under *St.* 1809, *c.* 108, § 2, the commander-in-chief, with ad-
vice of council, is authorized and empowered to organize and arrange the militia
of this commonwealth, conformably to the laws of the United States, and to make
such alterations therein as from time to time may be deemed necessary; and these
laws are not unconstitutional as being a delegation of legislative authority.

A standing company of militia being without any officers, orderly book or company
roll, and having, in order to avoid military duty, frequently elected as officers per-
sons who it was known would decline, the commander-in-chief made a general or-
der to disband the company, provided they should, after due notice, refuse or neg-
lect to choose officers who would bring them into service. After this a meeting
was warned, (but in what manner did not appear,) in pursuance of verbal orders
to several privates, and forty or fifty members attended and elected six persons
successively as captain, who all declined. Another meeting was warned by post-
ng up notice in a public place, and a major part of the company attended and
ected a person captain who declined; after which the company was disbanded

It was *held*, that the notice of the meetings, though it might not be strictly legal so as to give validity to an election, was yet sufficient for the purpose of allowing the company to avail themselves of the indulgence of the commander-in-chief.

The commander-in-chief, with advice of council, has authority to annex one town or part of a town to another, in order to form the territorial limits of a company.

A member of such refractory company having been fined by a justice of the peace, for not performing militia duty in another company to which he had been annexed, it was *held*, that any irregularities in disbanding the first company, but not affecting its rights, would not constitute a proper case for the exercise of the discretionary power of the Court to grant a *certiorari*.

THE petitioner had been fined by a justice of the peace, for neglecting to appear at a muster of a company of militia on the 3d of May, 1825, in the town of Rowe. He now prayed for a writ of *certiorari*, — because, being an inhabitant of the town of Heath, he was adjudged liable to duty in the militia company in the town of Rowe, by virtue of a sup· posed order of the governor, with advice of council, passed on the 21st of February, 1824, disbanding the company in Heath and annexing the same to the companies in Charlemont and Rowe ; — because it was adjudged that a copy of the supposed order certified by the secretary of the commonwealth, without oath, was legal and sufficient evidence to prove the existence of the order ; — and because, the supposed order being upon the condition that the company in Heath should, after due notice, refuse and neglect to choose officers who would serve, the company, pursuant to such order, were notified at a public house, in Heath, and in no other way, to meet for the election of officers, and about half of the company met accordingly, but failing upon one election to choose a captain who would accept the office, the company was thereupon declared by the officer presiding at the election to be disbanded, and the petitioner, with others, annexed to the company in Rowe.

The facts in the case and the questions raised in the argument, will appear sufficiently in the opinion of the Court.

*Sept. 28th.*     *Allen* and *Billings*, in support of the petition, cited Constitution, *c.* 2, § 1, *art.* 7, to show that the interference of the council was improper ; — Anc. Charters &c., *p.* 158, § 4, and *St.* 1809, *c.* 108, § 23, to show that the territorial limits of a company should not go beyond those of a town ; — Peake's Evid. 29 *et seq.* to the point that the order was not

aufy proved ; — and *St.* 1809, *c.* 108, § 21, to the point that due notice was not given of the last meeting of the company in Heath.

*Wells, contrà,* cited, in relation to the authority of the commander-in-chief with advice of council, *St.* 1809, *c.* 108, § 2 ; *Commonwealth* v. *Thaxter,* 11 Mass. R. 386 ; *Commonwealth* v. *Allen,* 16 Mass. R. 523 ; and to prove that the captain of the company in Rowe, having received orders from head-quarters, regular on the face of them, informing him of the disbanding of the company in Heath, and directing him to enrol some of the men, was bound to obey such orders, and that these men were bound to obey him as their captain, *de facto,* he cited *Sanford* v. *Nichols,* 13 Mass. R. 286 ; *Bucknam* v. *Ruggles,* 15 Mass. R. 180 ; *The King* v. *Lisle,* Andr. 163 ; *The People* v. *Collins,* 7 Johns. R. 549.

WILDE J. delivered the opinion of the Court. This case comes before us on a petition for *certiorari* to remove the proceedings before a justice of the peace, on an information against the petitioner for neglecting to appear at a company training, in order that the same may be quashed for the errors assigned.

It appeared at the trial, that the petitioner had been actually enrolled, was seasonably notified, and duly and legally warned to appear at the time and place and for the purpose mentioned in the information, and that he failed to appear. The only question made was, whether he was legally liable to be enrolled, and to perform duty in the company in the town of Rowe.

He formerly belonged to a company in the town of Heath. That company, for some cause unknown to us, but which, whatever it was, reflects but little credit on the patriotism and public spirit of the parties concerned, had manifested a determined opposition to the requisitions of law on their behalf, and were reduced to a state of disorganization and insubordination, which had continued for upwards of two years, when an application was made to the commander-in-chief that the company should be disbanded and the territory thereof be annexed to the adjoining companies in the towns of Charlemont and Rowe. This application was submitted

*Adams, Petitioner &c*

*April term 1826, at Greenfield.*

to the consideration of the council, who made report in favor of the application, that the company should be disbanded, and the territory north of a certain road should be annexed to the company of militia in the town of Rowe, and the territory southerly of such road to the company in Charlemont, and the governor was advised to order this arrangement to be carried into effect.

This report was accepted and approved by the governor, with a proviso in the words following, viz. " Provided the company, after due notice, shall refuse or neglect to choose officers who will bring them into service."

The petitioner's counsel contend that these proceedings were irregular, and that the council had no legal power to act in relation to the premises, and that the governor, acting as commander-in-chief of the militia, has alone the constitutional authority to train and govern the militia of this commonwealth.

By *St.* 1809, *c.* 108, § 2, it is enacted, " that the com mander-in-chief with advice of council, be and he hereby is authorized and empowered to organize and arrange the militia of this commonwealth, conformably to the laws of the United States, and to make such alterations therein, as, from time to time, may be deemed necessary." And by the 3d section of the act of Congress of May 8th, 1792, entitled " An act more effectually to provide for the national defence, by establishing a uniform militia throughout the United States," it is also enacted, that " the militia of the respective States shall be arranged into divisions, brigades, regiments, battalions, and companies, as the legislature of each State shall direct."

Notwithstanding these provisions, it is still contended that the council acquired no legal authority thereby, and that their doings were unconstitutional and void, because the legislature had no constitutional right to delegate its authority.

The view we have taken of the case does not however make it necessary for us to consider these objections, since it is clear that the constitutional power of the commander-in-chief cannot be diminished by any supposed want of authority in the council. In the exercise of his constitutional

powers it is competent for him to advise with his council, though he may not be required so to do ; or he may take the advice of any one, and if he adopts it, and acts thereon within the scope of his authority, the act will be valid.

It would not however be difficult, if necessary, to answer this objection.   By the constitution of the United States, Congress are " to provide for organizing, arming and disciplin- ing the militia ; reserving to the States respectively the ap- pointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress."

If the objection be valid, the legislatures of the States have no more authority to organize and arrange the militia, than the governor and council ; for if the law of the State purporting to authorize the commander-in-chief, with advice of council, to organize and arrange the militia, be void, being an improper delegation of authority, the act of Congress providing that the militia of the respective States shall be arranged as the legislature of each State shall direct, must be considered void for the same reason.   The consequence would be, that the most inconsiderable alteration in the or- ganization of the militia could not be made without an express act of Congress specially authorizing such alteration.   Such a construction of the constitution in this particular would lead to great difficulties and embarrassments ; and it would seem to me altogether extravagant.   All that was intended by the clause referred to, in the constitution of the United States, was, to give to Congress a controlling power in organizing the militia.   They are therefore to provide for organizing the militia, or to direct in what manner it shall be done.   The act of 1792, I consider a proper and constitutional provision. All the general outlines of the arrangement or organization are expressly laid down in the act, leaving to the legislatures of the respective States only the power of varying the manner, or arranging the details, as convenience or necessity might from time to time require.   This is to be done in the way and manner the legislature may direct.   The act of Congress does not require the legislature to make the arrangement, but to direct how and by whom it is to be done.   The phraseology is similar to that of the article of the constitution relating to

the choice of electors of president and vice-president, who are to be appointed in such manner as the legislature of each State may direct.

The next objection is, that the condition or proviso an nexed to the general order has not been performed, and therefore the order to disband the company has not been legally executed, and that the brigade and regimental orders for this purpose were void. The objection is, that there was no legal notice to the company to meet for the choice of officers, agreeably to the proviso.

It was proved on the trial, that after the general ordei, there were two meetings of the company for the choice of officers. The first was on the 2d of April. This meeting was notified in pursuance of verbal orders to several privates. The manner in which notice was given does not appear ; but forty or fifty members of the company appeared at the time and place appointed. Major Reed presided. He read the letter from the adjutant-general, and led them to a choice of a captain, who declined. After which, five other persons were elected captains and successively declined. Another meeting of the company was warned for the 7th of June, by posting up notice in a public place in the town. At this meeting Col. Wells presided, and a major part of the company appeared. All the orders were read, and the votes of the company were again called for. Solomon Gleason was elected captain and declined. Whereupon Col. Wells informed those present, that the company would not be called upon to make another choice, until he had assurances that the person elected would serve. Now although the notices of these meetings may not have been strictly legal, to give validity to an election, yet for the purpose of allowing the company to avail themselves of the indulgence afforded them by the commander-in-chief it appears to us that they were amply sufficient, and that the consequent proceedings amount to a performance of the condition or proviso according to ts true spirit and intent.

The object of the proviso was to allow the company an opportunity to return to their duty, and any notice which would accomplish this object or prove it unattainable, must

be deemed due notice within the meaning of the proviso. The facts prove beyond a question, that no notice would have produced the effect desired ; the company remained inflexible in their combination to oppose the due execution of the laws, and to continue to withdraw themselves from the performance of military duty. It is impossible to doubt that every member of the company had notice again and again of what was required of them to avert the threatened measure, and that they remained fixed in their determination not to avail themselves of the privilege of redeeming their credit, so indulgently allowed them by the commander-in-chief. During the various attempts made to reduce the company to a state of subordination, it was proved that about thirty persons had been successively chosen to the office of captain and had declined. After so manifest a combination to evade the laws it would not have been a severe measure to order an immediate disbanding of a company proving thus refractory. The lenient measures, therefore, which were adopted, are to be liberally construed, and the only notice required was such as was reasonable under all the circumstances. In the disorganized state of the company, with no officers, no orderly book, and no company roll, it would have been difficult to have given strictly legal notice, as required by the statute. Under all the circumstances of the case, therefore, we are of opinion that the notice was sufficient.[1]

Another objection is raised, namely, that the governor and council have not the power to annex one town or part of a town to another, in order to form the territorial limits of a company. But there is no express restraining clause to this effect, in the militia laws, upon the discretion of the executive ; nor is any such inference to be made from the 23d section of the act of 1809, which was cited for this purpose.

There were some minor objections made to the regularity of the proceedings in disbanding the company, which need not be particularly noticed, as they are sufficiently answered by the remarks already made.

But even admitting that these objections could not be satis-

32

---

[1] See Revised Stat. *c*. 12, § 89 ; *Washburn, Petitioner*, 9 Pick. 40.

Adams, Petitioner &c.

factorily answered, and that the proceedings in disbanding the company were not strictly regular and legal, we should nevertheless be of opinion, that a *certiorari* ought not to be granted. This application is to the discretion of the Court, and we cannot imagine a stronger case than the one presented, for the sound and salutary exercise of our discretion in refusing the application, notwithstanding some mistakes may have been made, since none of them are important or injurious to the rights of the company.

If the company wish to be restored to their former footing, the application is to be made elsewhere. We have no reason to doubt that they will at all times have an indulgent hearing from the executive authority, and that nothing reasonable will be refused them. But however this may be, we are very clear, that a case has not been made out which requires the interference of this Court.* [1]

---

* See *St.* 1825, *c.* 153.

[1] See *Gould* v. *Hutchins*, 1 Fairfield, 145.